UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SAPTA GLOBAL, INC.,** | Civ. No. 13-3698 (KM)(MAH) |
| **Plaintiff,** | |
| | **OPINION** |
| v. | |
| **CILICORP, LLC,** and **LENNARD M. TENENDE,** *individually*, | |
| **Defendants.** | |

The complaint in this case alleges that, among them, two companies (Sapta and Cilicorp) and one individual (Lennard Tenende) have entered into three contracts: 1) a written independent contractor agreement between Sapta and Cilicorp; 2) a written "Memorandum of Understanding" that purports to modify the payment schedule in the first contract; 3) An oral contract wherein Lennard Tenende personally guaranteed Cilicorp's debt to Sapta. Sapta alleges that it performed over $1.2 million worth of services for Cilicorp under the independent contractor agreement, but that neither Cilicorp nor Tenende paid.

Sapta filed a complaint in this Court asserting breach of contract and other claims. Neither Cilicorp nor Tenende has answered the complaint or defended the suit. Accordingly, Sapta has moved for a default judgment under FED. R. CIV. P. 55(b)(2). With respect to the Independent Contractor Agreement, the motion will be granted in part and denied in part. With respect to the Memorandum of Understanding and the personal guaranty, the motion will be denied.

## Background

The first contract at issue is a written one between two companies. Sapta Global Inc. and Cilicorp, LLC entered into an "Independent Contractor Agreement" (Agreement) under which Sapta was to provide Cilicorp with "computer skilled consultants." (Agrmt., ¶ 1).[1] It appears that the initial rate for these services would be $76 per hour, while subsequent rates would be provided in individual invoices. (*Id.* at ¶ 8 and Appx. A). The contract also provided that Cilicorp would not be liable for payment unless it accepted Sapta's services in writing, for example by email. (*Id.* at ¶ 3). A human resources director of Sapta and the Chief Executive Officer of Cilicorp executed the Agreement on behalf of their companies on January 1, 2011. Sapta alleges that in connection with this Agreement, it performed some $1,210,955.00 worth of services for Cilicorp. (Compl., ¶ 41).

Almost six months later, on May 25, 2011, the two companies entered into a second alleged contract. This document, titled "Memorandum of Understanding," seems to be intended to set a schedule on which Cilicorp would pay numerous invoices that were outstanding from the original Agreement. (Memo, 1). The Memorandum of Understanding lists some twenty seven invoices. However, it lists payment dates for only four of those invoices. (*Id.* at 1-2). Like the Agreement, the Memorandum of Understanding was signed by a human resources director of Sapta, and the CEO of Cilicorp. (*Id.* at 2).

The third alleged contract is an oral one. Sapta alleges that Lennard Tenende, the CEO of Cilicorp, personally guaranteed that Cilicorp would pay its

---

[1] Citations to the record will be abbreviated as follows:

"Agrmt." – Cilicorp LLC Independent Contractor Agreement, Dkt. No. 1, Exh. A.
"Compl." – Verified Complaint for Damages, Dkt. No. 1.
"Memo" – Sapta & Cilicorp LLC Memorandum of Understanding, Dkt. No. 1, Exh. B.
"Nachbar Cert." – Certification of Stuart M. Nachbar, Dkt. No. 6, 3-5.

2

debt to Sapta. (Compl., ¶ 13). Sapta alleges that neither Cilicorp as principal nor Tenende as guarantor has paid Sapta's invoices. (*Id.* at ¶ 14).

Sapta filed suit in this Court in June of 2013. The complaint contains six counts. It is not always clear which defendant or contract is referred to. Count I alleges that "Defendants" breached the contract created by the Memorandum of Understanding. Count II alleges that the defendants breached the implied covenant of good faith and fair dealing that inhered in their "contracts" with Sapta (presumably, all three of the purported contracts). Counts III, IV, and VI appear to allege breach of contract based on the Independent Contractor Agreement. Count V appears to allege fraud by the defendants.

Sapta filed an affidavit of service, attesting that a complaint and summons had been served on Lennard Tenende personally and on the Secretary of State for the State of Texas, who is authorized to receive service for defendant Cilicorp. (Dkt. Nos. 6, 7). Neither Tenende nor Cilicorp has answered the complaint or otherwise appeared to defend the case. At Sapta's request, the Clerk entered default on October 28, 2013. Some seven months later, I ordered Sapta to either move for a default judgment or face dismissal of its suit. (Dkt. No. 19). Sapta moved for a default judgment on May 27, 2014. The motion is unopposed.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff has proffered that both defendants are citizens of Texas: Tenende is a citizen of Texas, and Cilicorp is an LLC organized under the laws of Texas with a corporate office in Texas. Sapta is a corporation formed under the laws of New Jersey, with its principal place of business in New Jersey. (Compl., ¶ 2, 3, 5; *see also* Dkt. No. 4 (Sapta's response to the Court's order to show cause why jurisdiction exists).

## Discussion

### I. Default judgment standard

In deciding whether to grant a default judgment, courts consider three factors: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Catanzaro v. Fischer*, 570 F. App'x 162, 165 (3d Cir. 2014) (non-precedential). Here, I find that the first two factors are satisfied with respect to all counts. The plaintiff has been prejudiced in that it has experienced substantial delay in receiving money allegedly owed to it, and it has incurred the time expense of litigation. Because there is proof of service, I must assume that the defendants are aware of the case, and the record reveals no excuse for their failure to defend. With respect to the second factor, however, I find that Cilicorp and Tenende may well have valid defenses as to certain of Sapta's claims.

### II. Breach of Contract Claims

#### a. Independent contractor agreement

Under New Jersey law,[2] a breach of contract claim has three elements: a valid contract, a breach of that contract by the defendant, and damage to the plaintiff. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. App. Div. 2007). With respect to the Independent Contractor Agreement, Sapta has satisfied these requirements with respect to a portion of its claims. The Agreement constitutes a contract: two parties entered into a written agreement to exchange money for services. Each side received consideration (namely the other side's promise to

---

[2] The Independent Contractor Agreement contains a choice of law provision that any litigation concerning the Agreement shall be governed by the laws of Texas and New Jersey. (Agrmt., ¶ 16). Consistent with that provision, Sapta appears to sue under New Jersey law. (Nachbar Affidavit, ¶ 10 ("The Complaint, and Pleadings filed in support of this Motion clearly support a finding that the Defendants violated Plaintiffs' rights under New Jersey law.")

4

perform). Sapta has also pled that Cilicorp breached that contract. It alleges that although Sapta provided the services it promised, Cilicorp did not make the required payments. (Compl., ¶¶ 14, 37). There is some question, though, as to whether Cilicorp approved all of Sapta's invoices in writing, as required by the contract. Therefore, Sapta's claims of breach and damages merit closer scrutiny.

Sapta claims total damages of $1,210,955 (Compl., ¶¶ 41, 44). Establishing its entitlement to such damages, however, is not straightforward. Part of the difficulty stems from the Agreement itself, which leaves the terms for Cilicorp's payment somewhat open. "In return for performance of contracted services, Cilicorp agrees to pay Contractor for Services, as set forth in Appendix A." (Agrmt., ¶ 8). Appendix A, in turn, sets forth a rate of $76 per hour for consulting services. (*Id.* at Appendix A). It does not, however, specify a number of consultants that will be provided, or a number of hours those consultants are expected to bill. Rather, the contract seems to envision that the details will be agreed upon when the work is undertaken. It states that Sapta will "submit to Cilicorp, monthly, a written statement of services and costs simultaneously with invoicing. Payment term is net 30 days. Cilicorp agrees that the Invoices will be approved by email and no Contractor's time cards are required." (Agrmt., ¶ 8). The contract, then, is essentially an agreement that 1) Sapta will provide services, 2) Sapta will invoice Cilicorp for those services on a monthly basis at a rate to be set, and 3) Cilicorp will approve the invoices in writing, and then pay Sapta within 30 days of receipt of the invoice.

So, to prove each instance of damages, Sapta presumably would need an invoice and a written acceptance of the invoice by Sapta. The damages fall into three categories, based on the kind of proof proffered by Sapta.

**Damages Component 1**. As evidence of $714,884.00 of its damages, the plaintiff has offered the Memorandum of Understanding. (Memo, 1-2). The memorandum reads: "This memorandum of understanding presents the proposed dates by Cilicorp LLC for the payment towards the below raised invoices by Sapta Global Inc." It then lists some 27 invoice numbers along with

5

amounts that, presumably, represent the balance due on each invoice. Though the memo purports to provide dates for payment, only four of the invoices have a payment date listed. For the remaining 23 invoice numbers, no pay date is listed. The Memo is signed by Santhi PG Madabushi (listed as "Director-HR") on behalf of Sapta, and by Tenende (listed as "CEO") on behalf of Cilicorp. (*See* Memo).

The Memo can serve as Cilicorp's written acknowledgement of its debt to Sapta, or as Cilicorp's acceptance and approval of the invoices listed.[3] Thus, with respect to this $714,888 in damages, a default judgment against Cilicorp is appropriate.

**Damages Component 2**. As evidence of an additional $342,718 in damages, Sapta has offered only its own statement in its complaint that Cilicorp approved the charges: "Further pursuant to emails between the parties Invoices 1761-1800 were approved by the Defendant. The amount of these invoices totals $342,718." (Compl., ¶ 12). But there are no emails, invoices, or other evidence establishing these debts.

As to this portion of the debt, Cilicorp may well have a valid defense: specifically, that it never approved the invoices in question. The Agreement, in two places, states that Cilicorp must approve invoices in writing in order to become liable: In paragraph 3, titled "Condition Precedent," the parties agreed, "This agreement shall have no force or effect unless Contractor's services are accepted in writing by the client. Cilicorp approval by email confirms the Contractor's services." (Agrmt., ¶ 3). And in a section titled "Independent Contractor Fees," the Agreement provides that "Contractor shall submit to Cilicorp, monthly, a written statement of services and costs simultaneously with invoicing. Payment term is net 30 days. Cilicorp agrees that the invoices will be approved by email and no Contractor's time cards are required." (*Id.* at

---

[3] Sapta contends that the Memorandum of Understanding constitutes a separate contract in and of itself, a contention I address in Part II.c, *infra*. Here, I find only that the document sufficiently demonstrates Cilicorp's acceptance of the invoices as valid under the terms of the original Independent Contractor Agreement.

¶ 8). Because Sapta has provided no evidence that Cilicorp approved the invoices for this portion of its debt in writing, a default judgment is not justified.

**Damages Component 3.** For the remaining $153,353 in damages, Sapta offers no explicit explanation. Still less has it provided any evidence that Cilicorp approved the invoices. At various points, the complaint refers to "out-of-pocket disbursements" Sapta incurred in performance of the contract. (Compl., ¶ 29-29, 35, 40-41, 43-44). One might infer that this amount represents out-of-pocket disbursements, but it is nowhere stated. At any rate, the Agreement indicates that Sapta is *not* entitled to pass such expenses on to Cilicorp. Appendix A to the Agreement provides that "Transportation, travel, and other expenses incurred by Contractor in the performance of such services will be paid by the Contractor." (Agrmt., App. A). And the section of the Agreement titled "Independent Contractor Fees" provides that "[c]ontractor shall be responsible for all expenses incurred in association with the performance of the services." (*Id.* at ¶ 8). The next sentence of the Agreement does arguably suggest that Cilicorp will pay certain costs, but again it requires that Cilicorp approve those costs in writing: "Contractor shall submit to Cilicorp, monthly, a written statement of services *and costs* simultaneously with invoicing ... Cilicorp agrees that the Invoices will be approved by email." *Id.* (emphasis added). Here, as in the case of charges for service, the agreement "shall have no force or effect unless Contractor's services are accepted in writing by the client." *Id.* ¶ 3.

Thus, with respect to this third component of damages, I find that Cilicorp may well have a valid defense. A default judgment with respect to this amount is therefore not appropriate.[4]

---

[4] The Agreement provides for attorneys' fees. It states that if either party must bring suit to enforce the terms of the contract, the prevailing party shall be entitled to reasonable attorneys' fees. (Agrmt., ¶ 16). Sapta has requested that the Court award him attorneys' fees (*see, e.g.*, Compl., ¶ 20), however it has made no proffer of its attorneys' fees or costs. If the $153,353 in damages discussed here is meant to include

7

\* \* \*

Therefore, with respect to Counts III, IV, and VI, a judgment will be entered in favor of Sapta in the amount of $714,884.00 against defendant Cilicorp only (I deal with Sapta's claim against Tenende separately in Part II.b, *infra*.) The motion for default judgment is denied to the extent that it seeks further damages on these counts.

Sapta might believe it did not have fair warning that it would have to substantiate the amount of its claimed damages. Should such evidence of the rejected second and third components of damages exist, Sapta may file a motion to reconsider and amend the judgment within fourteen days. The motion should contain an affidavit sponsoring such additional evidence.

### b. *Guaranty*

Sapta has additionally alleged that Lennard Tenende, CEO of Cilicorp, personally guaranteed Cilicorp's debt. Tenende, Sapta says, "personally assured that he would guarantee that the payments would be made, and if the company, of which he is CEO did no [sic] pay, that he would make good on same." (Compl., ¶ 13). Because neither Cilicorp nor Tenende has paid Cilicorp's debts, Sapta says, Tenende is personally liable for breach of contract.

Guaranteeing the debts of another can indeed create an enforceable contract. Here, though, Tenende's guaranty is not enforceable because it was not in writing.

Under New Jersey law, a guaranty is not enforceable unless it is in writing. "A promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent." N.J. STAT. ANN. § 25:1-15. New Jersey courts do recognize a limited exception to this rule. *Walder, Sondak, Berkeley & Brogan v.*

---

attorneys' fees, Sapta must provide affidavits of counsel attesting to the amount and accuracy of such fees.

*Lipari*, 692 A.2d 68, 74 (App. Div. 1997). Where guarantor's principal motivation for guaranteeing the debt was to serve his own interests, the guaranty need not be in writing:

> When the leading object of the promise or agreement is to become guarantor or surety to the promisee for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time with the promise of the principal, is within the statute [of frauds], and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.

*Howard M. Schoor Associates, Inc. v. Holmdel Heights Const. Co.*, 343 A.2d 401, 404-05 (1975) (internal quotations omitted).

Sapta acknowledges that Tenende's alleged guaranty was not in writing. (Compl., ¶ 13). Thus, in order for the guaranty to be enforceable, Sapta would have to show that Tenende made the guaranty to further his own interests, under the exception described above. Sapta has not done so.

Most fundamentally, Sapta has not even alleged that Tenende was acting in his own interest when he made the alleged guaranty. Neither Sapta's Complaint nor its affidavit in support of its motion makes any allegation as to Tenende's motivation for guaranteeing Cilicorp's debt. Without such a representation, the Court has no basis to conclude that Tenende acted principally for his own interest.

One might speculate that as CEO of Cilicorp, Tenende had a financial interest in seeing Cilicorp succeed. If that were his principal motivation for guaranteeing Cilicorp's debt, his oral guaranty might be enforceable. However, it would be assuming too much to infer that this was one of Tenende's motivations, much less his "leading object." New Jersey courts have found guarantors to have acted not in their own interest, even when the guarantor had a financial investment in the debtor. "The present action falls factually within that category of suits where the original debtor is a corporation in which

the promisor has a financial interest. Such cases are fairly numerous. Depending upon their particular facts and circumstances, they have been decided both ways." *Howard M. Schoor Associates, Inc. v. Holmdel Heights Const. Co.*, 343 A.2d 401, 406-07 (N.J. 1975). To determine whether the exception to the writing requirement applies, a court must consider all of the circumstances surrounding the guaranty. "In applying this rule the finder of fact must examine all circumstances bearing upon the transaction, the relationship of the parties to one another and endeavor to discern the intent, purpose and object of the promisor." *Schoor*, 343 A.2d at 406. Here, there is simply too little information about the circumstances surrounding this guaranty.

Perhaps Tenende made the guaranty as a favor to Cilicorp. Perhaps Cilicorp was in financial trouble, Tenende felt responsible, and he made the guaranty out of a sense of obligation, or at Sapta's insistence. Maybe Tenende regarded himself as judgment proof, and so thought his guaranty worthless (his failure to answer the complaint is consistent with that). Without any evidence, the Court has no basis to believe or disbelieve any of these possibilities. It is hard enough to weigh these possibilities with no input from Tenende himself. To do so without even the input of Sapta would be simply arbitrary.

In short, even assuming that Tenende entered into an oral guaranty, I cannot conclude that he did so primarily to further his own interest. As a result, there is no basis to conclude that the requirement of a writing would be excused. Without proof of an enforceable guaranty, Sapta's claims, insofar as they relate to the guaranty, are not appropriate for default judgment.[5]

---

[5] It is possible that the guaranty is unenforceable on an alternative ground: that the guaranty was not supported by consideration. Like any other contract, a guaranty must be supported by consideration in order to be enforceable. *Great Falls Bank v. Pardo*, 622 A.2d 1353, 1359 (Ch. Div. 1993) *aff'd*, 642 A.2d 1037 (App. Div. 1994); 38A C.J.S. *Guaranty* § 21 ("Generally, a guaranty must be supported by consideration just as any other contract would be."). A guaranty can be supported by the same consideration that supported the original contract on which it is based. For that to be the case, however, the original contract and the guaranty must have been executed

10

Sapta's Complaint is unclear about which of its claims relate specifically to Tenende's alleged guaranty. Because a default judgment against Tenende is not proper, that ambiguity is not consequential. The motion, insofar as it seeks a default judgment against Tenende with respect to any count of the complaint, will be denied.

### c. *Memorandum of Understanding*

Count I of Sapta's complaint seems to allege a separate claim for breach of contract based on Cilicorp's breach of the Memorandum of Understanding. Any damages from this component of the claim would overlap the damages from breach of the original Agreement. As to Component 1 of the damages, the Agreement and Memorandum of Understanding are coextensive. The Memorandum of Understanding does not repair any of the deficiencies as to the rejected Components 2 and 3 of damages. At any rate, it is doubtful whether the Memorandum of Understanding is supported by consideration; it simply alters the deadlines for payment under the original Agreement.

The Memorandum of Understanding appears to have extended the time for Cilicorp to pay four of its invoices. The terms of the Independent Contractor Agreement state that Sapta will provide monthly invoices, and that Cilicorp must pay each invoice within thirty days. (Agrmt., ¶ 8). The Memorandum of Understanding alters this schedule in two ways: first, the invoices appear to be more frequent than monthly. The Memo lists 27 invoices, even though the

---

simultaneously. *Pardo*, 622 A.2d at 1359 ("Because the guaranty and the loan were not executed at the same time as part of the same agreement, the guaranty must be supported by separate consideration moving to the guarantor or the renunciation of something substantial by the guarantee.") (internal quotations and alterations omitted). Here, it appears that the guaranty was allegedly provided after the date of the original contract. Thus, to be enforceable, the guaranty must be supported by additional consideration. The burden for such consideration is not high. "[E]ither a slight benefit to the promisor or a trifling inconvenience to the promisee suffices." *Spardo*, 622 A.2d at 1359. Sapta, however, has identified no such consideration. It simply alleges that Tenende "orally personally assured that he would guarantee that the payments would be made, and if the company, of which he is CEO did not pay, that he would make good on same." One could assume that there was a bargained-for exchange: that Sapta agreed to extend Cilicorp's time to pay the outstanding invoices, and, in exchange, Tenende agreed to guarantee Cilicorp's debt. Sapta, however, has advanced no such theory.

Independent Contractor Agreement had been in effect for only six months or so. (Memo, 1-2). Second, it lists payment dates for four of the invoices, each of which is a one-week range rather than a specific date thirty days after the invoice date. (*Id.* at 1).

The Memorandum of Understanding is in substance a modification to the Independent Contractor Agreement. To be enforceable, a modification to a contract must provide consideration to all parties. "[N]o contract is enforceable without the flow of consideration—both sides must get something out of the exchange. That premise applies equally to agreements to modify existing contracts as to new contracts." *Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. App. Div. 2002) (internal quotations and alterations omitted).

No such consideration is not alleged or established here. Cilicorp (presumably) received some extension of its time to pay. Sapta, though, has not explained what consideration it received in return for that accommodation. Certainly, Cilicorp's promise to pay more slowly a debt that it already owed does not constitute consideration. "The principle is firmly imbedded in our jurisprudence that a promise to do what the promisor is already legally bound to do is an unreal consideration." *Levine v. Blumenthal*, 186 A. 457, 458 (N.J. Super. Ct. 1936) *aff'd*, 117 N.J.L. 426, 189 A. 54 (1937). And Sapta has identified no other benefit.[6]

Under New Jersey law, the consideration underlying a contract modification need not be substantial. "Any consideration for a modification, however insignificant, satisfies the requirement of new and independent consideration. For example, payment of an existing rent obligation one day in advance of the due date would suffice, slight as that consideration would be." *Simeonidis*, 800 A.2d at 276. So, for example, if there was some dispute as to how much Cilicorp owed, or when payment was due, the clarification that both sides obtained by signing the Memorandum of Understanding might constitute

---

[6] One possibility is that the consideration that Cilicorp received was Tenende's guaranty. Sapta, however, has made no such allegation, and in any event I have concluded that the oral guaranty was not enforceable.

12

consideration. *Simeonidis*, 800 A.2d at 277 (App. Div. 2002) ("[W]here a right or legal duty owing to the promisor is doubtful or the subject of honest and reasonable dispute, the clarification of such right or duty will constitute good and valuable consideration."). But Sapta does not allege that this was the case, the court cannot posit its own set of facts to save Sapta's claim.

Because Sapta has not identified any consideration it received in connection with the Memorandum of Understanding, a default judgment is not appropriate. In any event, all damages available under the Memorandum of Understanding have already been awarded for breach of the original Agreement. Sapta's motion will therefore be denied as to Count I, insofar as it alleges a breach of the Memorandum of Understanding.

### III. Implied Covenant of Good Faith and Fair Dealing

Count II of Sapta's complaint alleges that Sapta breached the implied covenant of good faith and fair dealing. The implied covenant of good faith is one that inheres in every contract. It requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997).

As to the Memorandum of Understanding and the personal guaranty, there can be no such claim. Where there is no enforceable contract, there can be no breach of the implied covenant of good faith and fair dealing. *Wade v. Kessler Inst.*, 778 A.2d 580, 584 (App. Div. 2001) *aff'd as modified*, 798 A.2d 1251 (N.J. 2002) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."). I will therefore consider this Count only insofar as it relates to the original Independent Contractor Agreement.

Sapta makes no independent allegation in support of this claim; it simply recharacterizes its allegations that Cilicorp failed to perform under the explicit terms of the contract. (Compl. ¶ 25). A breach of the express terms of a contract, though, does not automatically constitute a breach of the implied

13

covenant of good faith and fair dealing. At a minimum, the plaintiff must allege that the defendant has not acted in good faith. ("Proof of bad motive or intention is vital to an action for breach of the covenant."). *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 864 A.2d 387, 396 (N.J. 2005). Or to put it differently, the plaintiff must allege that the defendant engaged in some conduct that denied the plaintiff the benefit of the bargain originally entered by the parties. *Id.*

Plaintiff has not alleged bad faith, much less provided any evidence of it. For example, Sapta has not alleged or offered evidence that Cilicorp's failure to pay was in bad faith, and not, for example, the result of a simple inability to pay. Entry of default judgment against any defendant as to Count II of the complaint is therefore not appropriate.

## IV.   Fraud

Count V of the Complaint appears to allege fraud. "Plaintiff's claims against Defendants are founded upon Defendants' deceptive, constructive, and actual promises for payment both prior to, and upon completion of, Plaintiff's rendition of services on the Defendants [sic] behalf." (Compl., ¶ 38).

To the extent that Count V is attempting to state a claim for fraud, default judgment is not appropriate. To state a claim for common law fraud in New Jersey, a plaintiff must allege five elements: "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico*, 507 F.3d at 200 (internal citations and quotations omitted). Sapta has alleged, not misrepresentations, but "promises" to pay. For such a promise to constitute a misrepresentation, the promisor must have had a contemporaneous "knowledge or belief of its falsity." There is no such factual allegation here. Without such an allegation, a claim for common law fraud is not properly pled, and a default judgment for Sapta is not appropriate.

14

**Conclusion**

      Sapta's motion for default judgment will be granted in part and denied in part. A separate order will issue.

Dated March 30, 2015
Newark, New Jersey

                                                **KEVIN MCNULTY**
                                      **United States District Judge**